**SIGNED this 27 day of March, 2015.**





**Austin E. Carter
United States Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Case No. 13-51318-AEC |
| Barbara Lundy Seltzer, | ) | |
| | ) | Chapter 13 |
| Debtor. | ) | |
| | ) | |
| Camille Hope, Standing Chapter 13 Trustee, | ) | |
| | ) | |
| Movant, | ) | |
| | ) | |
| v. | ) | Contested Matter |
| | ) | |
| Quantum3 Group LLC, as agent for | ) | |
| MOMA Funding LLC, | ) | |
| | ) | |
| Respondent. | ) | |

Before
Austin E. Carter
United States Bankruptcy Judge

Counsel

    For Debtor:                                     Richard Katz
                                                              355 Cotton Ave
                                                              Macon, Georgia 31201

    For Standing Chapter 13 Trustee:       Camille Hope
                                                               P.O. Box 954
                                                               Macon, Georgia 31202

    For Respondent:                            Lisa Ritchey Craig
                                                               271 17th St., NW, Suite 2200
                                                               Atlanta, Georgia 30363

# MEMORANDUM OPINION

This contested matter comes before the Court on an Objection to Claim by Camille Hope, as trustee in this case. In her objection, the trustee asks the Court to disallow claim number 7-1, filed by Quantum3 Group LLC as agent for MOMA Funding LLC (hereinafter, "MOMA"). The Debtor supports the trustee's objection. MOMA filed a response opposing the disallowance of the claim. MOMA, the trustee, and the Debtor appeared at the hearing and argued in support of their respective positions.

Proceedings to determine the allowance or disallowance of claims against the estate are core proceedings under 28 U.S.C. § 157(b)(2)(B). The Court states its findings of fact and conclusions of law separately pursuant to Federal Rule of Civil Procedure 52, made applicable here by Federal Rule of Bankruptcy Procedure ("Bankruptcy Rule") 7052.

## FINDINGS OF FACT

The facts in this matter are undisputed.

The Debtor filed her Petition for Chapter 13 bankruptcy relief on May 24, 2013, along with her Schedules. On Schedule F - Creditors Holding Unsecured Nonpriority Claims, the Debtor scheduled a claim of $2,191.00 held by Applied Bank. The Debtor did not mark this claim as "disputed" on Schedule F.

At some point prior to the filing of this case, the Applied Bank claim was transferred to MOMA. On July 2, 2013, MOMA timely filed proof of a general unsecured claim in the amount of $2,739.93. At the time the case was filed, this claim was time-barred under the statute of limitations applicable under Georgia law.

The Debtor's plan was filed on May 24, 2013 and confirmed by order of the Court entered October 15, 2013 (the "Plan"). The Plan obligates the estate to pay a 100% dividend to all holders of unsecured claims that are proven and allowed. After confirmation—from January 2014 until September 2014 (when she filed the instant objection)—the trustee, pursuant to the Plan, made eight payments on the MOMA claim, totaling $546.85. On September 20, 2014, the

trustee filed an objection to MOMA's claim on the ground that it is barred by the statute of limitations applicable under Georgia law. That objection is the subject of this Opinion.

### CONCLUSIONS OF LAW

This case presents an issue that apparently has not previously been addressed in reported decisions of bankruptcy courts seated in Georgia—whether, under Georgia law, a time-barred debt is revived under O.C.G.A. § 9-3-112 by: (1) a debtor's listing of the time-barred claim in her schedules as undisputed and providing in her plan for the payment in full of allowed unsecured claims; and (2) the commencement of payments by the trustee to the holder of such claim under a confirmed plan.

Section 502 is the foundation for determining whether a claim is allowed in a bankruptcy case.[1] According to § 502, "[a] claim . . . , proof of which is filed under section 501 . . . , is deemed allowed, unless a party in interest . . . objects," and "if such objection is made, the court . . . shall allow such claim in such amount except to the extent that" one of the nine specific disallowance provisions in § 502(b) applies. 11 U.S.C. § 502(a), (b). Section 502(b)(1) provides for the disallowance of any claim to the extent that "such claim is unenforceable against the debtor and property of the debtor, under . . . applicable law . . . ." *Id.* § 502(b)(1).

Once a party in interest raises an objection pursuant to § 502(b)(1), the burden of proof is determined by applicable nonbankruptcy law. *In re Crutchfield*, 492 B.R. 60, 69 (Bankr. M.D. Ga. 2013) (citing *Raleigh v. Ill. Dep't of Revenue*, 530 U.S. 15, 21 (2000)). The parties concede that Georgia law is applicable. The trustee asserts an affirmative defense under Georgia's statute of limitations and MOMA counters with O.C.G.A. § 9-3-112, a Georgia revival statute. Although MOMA's claim has the presumption of validity under Bankruptcy Rule 3001(f), the parties agree that the statute of limitations bars MOMA's claim, but for the possible application of O.C.G.A. § 9-3-112. Therefore, the burden under Georgia law is on MOMA to show that the

---

[1] Unless otherwise indicated, all references herein to "section" or "§" refer to a corresponding section of the Bankruptcy Code, and all references to the "Bankruptcy Code" relate to the corresponding sections of Title 11 of the United States Code.

3

elements of O.C.G.A. § 9-3-112 have been met. *See* O.C.G.A. § 24-14-1; *see also Douglas Kohoutek, Ltd. v. Hartley, Rowe & Fowler, P.C.*, 543 S.E.2d 406, 407, 247 Ga. App. 422, 423 (2000) (stating burden shifts to plaintiff upon defendant's establishing prima facie statute of limitations defense).

O.C.G.A. § 9-3-112 provides: "A payment entered upon a written evidence of debt by the debtor or upon any other written acknowledgment of the existing liability shall be equivalent to a new promise to pay." Thus, to "revive" a time-barred debt under this statute, two elements must be shown: (1) a payment by the debtor on the time-barred debt, which is entered upon (2) written evidence or other written acknowledgement of the debt by the debtor.[2] Although the statute refers to the revival as being equivalent to "a new promise to pay," such "new promise shall revive or extend the original liability; it shall not create a new one." *See* O.C.G.A. § 9-3-113.

MOMA contends that the elements of O.C.G.A. § 9-3-112 are met because: (1) the Plan payments it received from the trustee were made by the trustee on the debtor's behalf; and (2) the Debtor acknowledged the debt in writing in her Schedule F (which did not show MOMA's claim as disputed) and in her Plan (which proposed to pay allowed unsecured claims in full). For the reasons that follow, the Court finds these arguments unpersuasive.

**A.     Payments on Debt.**

To qualify under the Georgia revival statute, the subject payments must be made by the debtor or one authorized by her to act as her agent. *Ryal v. Morris*, 68 Ga. 834, 834 (1882) ("A partial payment of a promissory note, to relieve it of the bar of the statute of limitations, must be entered by the debtor or some one authorized by him to do so . . . ."); *Green v. Juhan*, 66 Ga.

---

[2]  The phrase "entered upon" in this statute appears to refer to a former debtor/creditor practice whereby it was proven that payments were made on a debt by the debtor's writing the amount of the credit or verifying the same by signature on the written instrument evidencing the obligation. *See e.g.*, *Foster v. Cochran*, 15 S.E. 551, 552, 89 Ga. 466 (1892); *George v. Gardner*, 49 Ga. 441, 450 (1873). *Compare infra* notes 7, 10 (setting forth titles of revival statute as "Effect of credit on note."), *with infra* note 9 (setting forth title of virtually identical statute as "Effect of payment or written acknowledgement of liability."). The phrase now seems to be interpreted to mean payment sufficiently related to a satisfactory writing. *See, e.g.*, *Garrett v. Lincoln Cemetery, Inc.*, 252 S.E.2d 650, 148 Ga. App. 744 (1979) (applying revival statute, as set forth in *infra* note 9, to payment by notated check). Despite the change in the title, the previous versions of this revival statute are virtually identical to the current version, O.C.G.A. § 9-3-112.

531, 535 (1881) (ruling that payments could be made by agent, so long as there was clear evidence of an agency relationship); *George v. Gardner*, 49 Ga. 441, 450 (1873) (holding that payments made by partnership in which debtor was partner did not revive debt because not made by partner individually). MOMA contends that the trustee made the Plan payments to MOMA on behalf of the Debtor and that the Georgia statute is therefore satisfied by such payments.

The Court disagrees. The trustee does not represent the Debtor, nor does the trustee make Plan payments on the Debtor's behalf. Section 323(a) of the Bankruptcy Code (made applicable in Chapter 13 cases by § 103(a)) establishes that the trustee is the representative of the estate. No code provision provides that the trustee is the representative of the debtor. Other courts have recognized that, in making payments to creditors, the trustee does not serve as agent for the debtor. *See, e.g.*, *In re Obie Elie Wrecking Co.*, 35 B.R. 114, 115 (Bankr. N.D. Ohio 1983) ("[T]he attorney for the debtor argues obliquely that the trustee, acting as agent for the debtor, makes payments at the direction of the debtor, and that the payments are, therefore, voluntary acts of the debtor. Obviously, the trustee is not the agent of the debtor. 11 U.S.C. § 323(a). He acts as representative of the estate, managing the estate's funds for the benefit of creditors of the estate."). This Court agrees.[3]

A related obstacle to MOMA's position is that trustee payments cannot be used to support the revival of a time-barred debt is that such payments are not voluntary in the sense traditionally required for revival. In *U.S. v. Lorince*, the court, interpreting a federal revival statute similar to Georgia's, recognized that:

> [P]ayments must be voluntary in order to reflect the debtor's acknowledgment of his obligation. For this reason, other courts have rejected the notion that

---

[3] Further, the payments made under the Debtor's Plan were not even payments from the Debtor's property, but were payments from property of the estate. The Court takes notice that paragraph 2(q) of the Plan (and paragraph 2(p) of the order confirming the Plan) includes a non-vesting provision (as allowed by § 1327(b)), pursuant to which all nonexempt pre-confirmation property remains property of the estate. Further, all nonexempt post-confirmation property remains in the estate pursuant to § 1306(a) as interpreted by the Eleventh Circuit in *Waldron v. Brown (In re Waldron)*, 536 F.3d 1239 (11th Cir. 2008). Therefore, the only way that any of the trustee's payments to MOMA were made from the Debtor's property would be if the Debtor had contributed exempt property into the Plan. MOMA presented no evidence showing that the Debtor made any payments from exempt property into the Plan.

5

payments made by trustees in bankruptcy qualify as partial payments reviving the statute of limitations.

773 F. Supp. 1082, 1092 (N.D. Ill. 1991) (citations omitted).

This concept is further supported by the fact that, in this case, the trustee's payments were not made on account of the debtor's scheduling of the MOMA claim, but instead were made only because of MOMA's filed claim (which, until the trustee filed her objection, was deemed allowed under § 502(a)). *In re VanCleef*, 479 B.R. 809, 815 (Bankr. N.D. Ind. 2012) ("[I]n order for a Chapter 13 Trustee to disburse to a creditor, even under the terms of a confirmed plan, that creditor must file a proof of claim."); *In re Jackson*, 482 B.R. 659, 663 (Bankr. S.D. Fla. 2012) (same); *see also* Fed. R. Bankr. P. 3002(a). This is contrary to the terms of the revival statute, which requires that payments be "entered upon" the Debtor's acknowledgement of the debt.[4]

Even if the trustee's payments to MOMA had been made on behalf of, or as agent for, the Debtor, however, such payments cannot revive the debt because they were made post-petition. Section 558 provides that the debtor's estate has the benefit of all defenses of the debtor (including, specifically, the statute of limitations), and that a debtor cannot waive the estate's use of any such defense through her post-petition conduct.[5]

Although it did not cite § 558, a recent decision from the U.S. Bankruptcy Court for the Middle District of Louisiana, on strikingly similar facts (and featuring this creditor's agent), found for the debtor, repudiating the creditor's argument that a debtor's post-petition actions can trigger revival:

> [The creditor's] rights in the debtors' bankruptcy were measured as of the date of the chapter 13 petition. A debtor's unilateral actions after a bankruptcy filing, including providing for payments on a claim through a confirmed plan, cannot

---

[4] In its Response, MOMA acknowledges that the trustee's payments were made "based upon the proof of claim filing (written evidence of a debt) . . . ." (MOMA Response, ¶ 8).

[5] The estate shall have the benefit of any defense available to the debtor as against any entity other than the estate, including statutes of limitation, statutes of frauds, usury, and other personal defenses. A waiver of any such defense by the debtor after the commencement of the case does not bind the estate.

11 U.S.C. § 558.

alone revive an unenforceable prepetition debt. The logical implication of [the creditor's] argument is that debtors essentially could incur debt post-petition unintentionally simply by prosecuting a chapter 13 plan. That result is not consistent with the Bankruptcy Code or underlying policy.

*In re Robertson*, No. 11-10354, 2014 WL 6967935, at *3 (Bankr. M.D. La. Dec. 8, 2014) (citations omitted).[6] The *Robertson* decision concerns Louisiana, rather than Georgia, revival law, but the underpinnings of the decision apply to this case and to the Georgia revival statute at issue, and, more importantly, relay the exact policies embodied by § 558.

For all of these reasons, the Court holds that the payments made by the trustee to MOMA under the Plan are not sufficient to revive MOMA's claim under O.C.G.A. § 9-3-112.

**B.    Written Evidence or Other Acknowledgement of Debt.**

Even if MOMA could satisfy the payment element of the Georgia revival statute, the trustee's objection must be sustained because the second element of the revival statute has not been satisfied.

The second element of the revival statute requires written evidence or other written acknowledgment of the debt. This written evidence or other acknowledgement must be made by the debtor or one authorized by her to act as her agent. *Watkins v. Harris*, 10 S.E. 447, 447, 83 Ga. 680, 680 (1889) ("The Code, §§ 2934, 2935, plainly intends that a new promise implied from a credit entered upon an evidence of debt shall count for nothing against the statute of limitations, unless it is in the handwriting of the debtor, or, if in the handwriting of another,

---

[6]    The court's statement that: "[the creditor's] rights in the debtors' bankruptcy were measured as of the date of the chapter 13 petition" is supported by § 502(b), which requires the court to measure the amount of claims as of the petition date. *See* 11 U.S.C. § 502(b) ("[T]he court, after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States *as of the date of the filing of the petition . . . .*") (emphasis added); *see also* 4 Collier on Bankruptcy ¶ 502.03[2][b] (Alan N. Resnick & Henry J. Sommer, eds., 16th ed.) (recognizing § 558's connection to § 502(b)).

7

signed by the debtor, or by some one duly authorized.");[7] *George*, 49 Ga. at 450 ("In regard to the credits on the notes, the same were not made by the mortgagor, either in his own handwriting or subscribed by him, or by any one authorized by him, within the true intent and meaning of the 2883d and 2884th sections of the Code.") (citation omitted).[8] In cases interpreting the predecessors of O.C.G.A. § 9-3-112, courts have recognized that the written evidence or acknowledgment must be "such an absolute and unqualified admission of it as an existing indebtedness that the law would imply a promise to pay the same." *Cleveland Lumber Co. v. Proctor & Schwartz, Inc.*, 397 F. Supp. 1088, 1093 (N.D. Ga. 1975) (citation omitted).[9] Put another way, the acknowledgment should "contain an unqualified admission of a present subsisting debt which the party is liable to pay, and not merely that the debt was once due." *Kelly v. Strouse*, 43 S.E. 280, 281, 116 Ga. 872 (1903).[10] In addition, the written evidence or

---

[7]     Sections 2934 and 2935 refer to *The Georgia Code of 1860*, in its fourth edition, published in 1882. The text of these statutes is:

> § 2934. (2883.) (2875.) *New promise must be in writing.* A new promise, in order to renew a right of action already barred, or to constitute a point from which the limitation shall commence running on a right of action not yet barred, must be in writing, either in the party's own handwriting, or subscribed by him, or some one authorized by him.
>
> § 2935. (2884.) (2876.) *Effect of credit on note.* A payment entered upon a written evidence of debt by the debtor, or any other written acknowledgement of the existing liability, is equivalent to a new promise to pay.

Ga. Code of 1860 (Ga. Code of 1882) §§ 2934, 2935 (Geo. N. Lester, C. Rowell & W.B. Hill, eds., Atlanta, Jas. P. Harrison & Co., 4th ed. 1882), *available at* http://digitalcommons.law.uga.edu/cgi/viewcontent.cgi?filename=1&article=1032&context=ga_code&type=additional, at 736 (last modified Nov. 9, 2012).

[8]     Sections 2883 and 2884 refer to *The Georgia Code of 1860*, in its 1868 revision. Ga. Code of 1860 §§ 2883, 2883 (R. H. Clark, T. R. R. Cobb & D. Irwin, eds., rev. ed., Atlanta, Franklin Steam Prtg. House 1868), *available at* http://archive.org/stream/codeofstateofgeo00clar#page/546/mode/2up (last visited Mar. 20, 2015). The text of these statutes is identical to the text set out in note 6, *supra*.

[9]     The court in *Cleveland Lumber Co.* was applying § 3-903 of *The Georgia Code of 1933*, as revised, which states:

> 3-903. (4385) *Effect of payment or written acknowledgement of liability.* A payment entered upon a written evidence of debt by the debtor, or any other written acknowledgement of the existing liability, shall be equivalent to a new promise to pay.

Ga. Code of 1933 § 3-903 (Orville A. Park & Harry S. Strozier., eds., Atlanta, Harrison Co. 1935) (title italicized for style), *available at* http://digitalcommons.law.uga.edu/cgi/viewcontent.cgi?filename=1&article=1032&context=ga_code&type=additional, at 125 (last modified Nov. 16, 2012).

[10]    The court in *Kelly* was interpreting § 3789 of *The Georgia Code of 1895*, which states:

acknowledgement "must be communicated to the creditor." *SKC, Inc. v. EMAG Solutions, LLC*, 755 S.E.2d 298, 301, 326 Ga. App. 798, 801 (2014).

MOMA argues that the written evidence or acknowledgement element of the revival statute is met because: (1) the Debtor included MOMA's claim on her Schedule F in this case, not marking it as disputed; and (2) the Debtor proposed a plan that provides for payment in full of all allowed unsecured claims (including MOMA's).

For the reasons discussed below, neither of these arguments passes muster.

A debtor in a Chapter 13 case prepares and files her schedules under direction of § 521(a).[11] Although Official Form B 6F instructs debtors to mark any claim that is disputed, the parties could not cite, and the Court could not find, any such requirement on Chapter 13 debtors in the Bankruptcy Code. Section 521(a)(1), which requires debtors to file a list of claims and creditors, does not require a debtor to signal which claims are disputed. The only two instances in the Bankruptcy Code that address the implication of marking a claim as disputed on a debtor's schedules appear to be §§ 925 and 1111(a), which provide that in Chapter 9 and Chapter 11 cases, respectively, scheduled claims are deemed filed unless marked as disputed, contingent, or unliquidated. Notably, this provision is absent from Chapter 13 (and Chapter 7). Indeed, at least one recognized authority on Chapter 13 cases criticizes the use of the disputed signal in the schedules of Chapter 13 debtors. *Keith M. Lundin & William H. Brown*, Chapter 13 Bankruptcy (4th ed.) § 17.1 ¶ 1 (last revised Mar. 5, 2009) ("[B]ecause 'disputed' is not a term of art in Chapter 13 practice, its use to describe debt is confusing and counterproductive."); *id.* § 35.5 ¶ 6

---

§3789. (2935). *Effect of credit on note*. A payment entered upon a written evidence of debt by the debtor, or any other written acknowledgement of the existing liability, is equivalent to a new promise to pay.

Ga. Code of 1895 (Vol. 2) § 3789 (John L. Hopkins, Clifford Anderson & Joseph R. Lamar eds., Atlanta, Foote & Davies Co. 1896), *available at* http://digitalcommons.law.uga.edu/cgi/viewcontent.cgi?filename=5&article=1028&context=ga_code&type=additional, at 842 (last modified Nov. 15, 2012).

[11]    A debtor can amend her schedules at any time before her case is closed. Fed. R. Bankr. P. 1009(a).

(last revised May 12, 2009) ("[I]n a Chapter 13 case, listing a secured claim (or any claim) as disputed serves no obvious purpose and can be misleading or damaging.").[12]

Although there are many reported decisions where courts have considered an entry in a debtor's schedules as an evidentiary admission, it is generally recognized that a debtor's schedules do not constitute admissions against the trustee. *See Pursley v. eCAST Settlement Corp. (In re Pursley)*, 451 B.R. 213, 222 (Bankr. M.D. Ga. 2011) (assessing evidentiary value of debtor's having scheduled claim, when creditor's proof of claim fails to comply with Bankruptcy Rule 3001). Thus, the Debtor's scheduling this claim, without designating it as disputed, does not preclude the trustee from arguing that MOMA's claim is barred by the statute of limitations.

Because there appear to be no reported decisions assessing whether the scheduling of a debt might constitute an acknowledgment under the Georgia revival statute, the Court has looked to reported decisions assessing this question under other revival statutes. It appears that most courts to address this issue have refused to consider the listing of a claim on a debtor's bankruptcy schedules as the acknowledgment of the debt as required for revival. *See Biggs v. Mays*, 125 F.2d 693, 697-98 (8th Cir. 1942) (listing of claim in bankruptcy schedules as undisputed is not sufficient acknowledgement to revive time-barred debt); *In re Povill*, 105 F.2d 157, 160 (2nd Cir. 1939) (same); *In re Tragopan Props., LLC*, 263 P.3d 613, 618 (Wash. Ct. App. 2011) (declining to recognize claim scheduled as undisputed as acknowledgment sufficient to revive time-barred debt, because "the listing of a debt in the schedules to a bankruptcy petition is primarily intended to obtain relief under the Bankruptcy Code."); *see also In re Robertson*, 2014 WL 6967935, at *2 n.12 (noting, in dicta, that debtor's scheduling of creditor's claim

---

[12] The Debtor argues that, in a Chapter 13 case, creditors are typically listed on schedules for notice purposes only, with no attention paid to the disputed column during their preparation. The Court does not opine on the propriety of marking debts as disputed on schedules in Chapter 13 cases (or Chapter 7 cases). However, in addition to the situation faced by the Debtor in this case, debtors should be aware of reported decisions wherein failure to mark a debt as disputed has entailed negative consequences for the debtor. *See, e.g., In re Cluff*, 313 B.R. 323, 339 (Bankr. D. Utah 2004), *aff'd sub nom. Cluff v. eCast Settlement*, No. 2:04-CV-978 TS, 2006 WL 2820005 (D. Utah Sept. 29, 2006) (holding Chapter 13 debtors' failure to mark claims as disputed constituted an evidentiary admission that claims were legitimate); *In re McCarthy*, No. 04-10493-SSM, 2004 WL 5683383, at *5 (Bankr. E.D. Va. July 14, 2004) ("Absent . . . amendment, however, the court concludes that the scheduling of the debt as undisputed, non-contingent, and unliquidated should be binding on the debtor.").

would not have supported finding of revival); *In re Brill*, 318 B.R. 49, 52 n.1 (Bankr. S.D.N.Y. 2004) (stating same conclusion under New York revival statute). The Court agrees with these decisions and holds that a debtor's scheduling of debts in compliance with the Bankruptcy Code is not the "unqualified admission" of liability required under Georgia law.

MOMA cites *Dominguez v. Castaneda*, 163 S.W.3d 318 (Tex. App. 2005) for the contrary position. In *Dominguez*, the Texas Court of Appeals, based on a "limited record," upheld the trial court's holding that the debtor had revived a debt otherwise barred by the statute of limitations.[13] 163 S.W.3d at 327-28. The court's decision seems, at least in part, based on the debtor's signed Chapter 13 schedules, wherein the creditor was listed as having a disputed claim.[14]

---

[13]  The Texas revival statute at issue provides:

> An acknowledgment of the justness of a claim that appears to be barred by limitations is not admissible in evidence to defeat the law of limitations if made after the time that the claim is due unless the acknowledgment is in writing and is signed by the party to be charged.

Tex. Civ. Prac. & Rem. Code. Ann. § 16.065 (West).

[14]  In several places, the *Dominguez* opinion seems to refer to the schedules as having revived the debt. *See, e.g.*, 163 S.W.3d at 323 ("[The debtor] included the [time-barred debt] as a *scheduled* debt in her Chapter 13 filing. [The debtor] testified that she filed the *schedule* which included the $25,000 obligation *but checked the 'disputed' box with regard to this debt*. At trial, she also testified that she did not intend to pay the debt but had been instructed to list all her debts in the *schedule*." (emphasis added)), 328 ("The bankruptcy filing lists the debt in the secured creditors *schedule* and is signed by the [the debtor]." (emphasis added)).  However, the court also refers to the debtor's plan and the bankruptcy filing, though without any specificity. *See, e.g., id.* at 323 ("[The debtor] did not make any payments under the *plan* and the *bankruptcy* was eventually dismissed." (emphasis added)), 328 ("The trial court also found that the promise to pay and acknowledgment of the debt was formalized by [the debtor's] Chapter 13 Bankruptcy *filing*. The bankruptcy *filing* lists the debt in the secured creditors schedule and is signed by the [debtor]. . . . [W]e agree with the trial court that the *filing* was a promise to pay, albeit in compliance with the limitations of the Bankruptcy Code, in writing and signed by the [the debtor] as required by [the Texas revival statute]. The bankruptcy *case* was dismissed on April 24, 2001 which triggered a new obligation to pay the debt." (emphasis added)). Further, the opinion recites that the trial court found that the debtor's plan promised to pay the claims of all her creditors, including the plaintiff creditor. *Id.* at 324.

  A recent case from the U.S. District Court for the Southern District of Texas suggests that the *Dominguez* holding turned on the *dismissal* of the bankruptcy case rather than the *filing of the schedules* by the debtor. *See Callan v. Deutsche Bank Trust Co. Ams.*, 11 F. Supp. 3d 761, 768 (S.D. Tex. 2014) (stating that bankruptcy case in *Dominguez* was filed within limitations period, and that *Dominguez* court considered "the bankruptcy dismissal date, which was outside the limitations period, [as] the date when the debt was acknowledged, thereby triggering the new limitations period"). A review of the relevant dates set forth in *Dominguez* seems to confirm that the bankruptcy case was filed one month before the expiration of the limitations period (*See* 163 S.W.3d at 322, 323, 327). If so, according to the *Callan* court, this would remove the schedules from consideration as an acknowledgment, since the Texas revival statute at issue "has no applicability where the claim is not already barred by the statute of limitations." 11 F. Supp. 3d at 768.

11

To this Court's knowledge (and, apparently, to the parties'), *Dominguez* stands alone. While *Dominguez* contains some broad language that may support MOMA's position generally, the decision is not grounded in any principles of bankruptcy familiar to this Court. This Court fails to see how the scheduling of a claim as disputed in a bankruptcy case could constitute an acknowledgment of that claim's validity, let alone an implied promise to pay the claim.[15] Moreover, the apparent holding in Dominguez—that the scheduling of a claim as disputed can constitute an acknowledgement and revival—runs counter to MOMA's argument in this case, as MOMA insists that the Debtor's acknowledgement results from the Debtor's *failure* to mark the debt as disputed in her Schedules. This Court is not persuaded by *Dominguez* and agrees with the other opinions cited above.

Even if the Schedules did constitute a written acknowledgment, however, there is no indication in the record that the Debtor delivered her Schedules, or otherwise communicated the information therein, to MOMA, as required to invoke revival pursuant to *SKC, Inc.*, cited above.

Similarly, MOMA's second point fails. The Debtor's filing of the Plan does not qualify as an acknowledgement under the revival statute.

The Plan contains no specific reference to the MOMA claim, but rather promises to pay a 100% dividend to "[g]eneral unsecured creditors whose claims are duly proven and allowed." In *In re Robertson*, discussed above, the court refused to recognize a plan provision providing generally for payment of "allowed secured claims" as sufficient to revive a debt under Louisiana law. 2014 WL 6967935, at *2 & n.10; *accord In re Tragopan Props., LLC*, 263 P.3d at 619-20 (inclusion of claim in unconfirmed plan not sufficient acknowledgment to revive debt). In fact, when the Plan was filed on May 24, 2013, MOMA had no allowed claim because it had not yet filed a proof of claim. Until MOMA filed its proof of claim on July 2, 2013, it held no allowed

---

[15] The scattered and incomplete recitation of facts in *Dominguez* leaves open the possibility that court's decision was based more on the provisions of the debtor's plan than on the schedules. If, as the trial court found, the plan provided for payment of the plaintiff creditor's claim, it would likely have been an express and specific commitment to pay that claim, since it was a secured claim. These facts, which have obvious import as a matter of bankruptcy law, were not clearly set forth.

claim. 11 U.S.C. § 502(a); Fed. R. Bankr. P. 3012(a).  This scenario is a far cry from the facts presented in *Weaver v. Maney (In re Weaver)*, No. AZ-05-1052, 2006 WL 6811027 (B.A.P. 9th Cir. Mar. 17, 2006), cited by MOMA, where the plan expressly provided for certain payments to a secured creditor specifically identified in the plan and where no objection to the creditor's claim had been filed.

Moreover, the Debtor's filing of her Plan occurred after the commencement of the case.  As noted above, § 558 precludes any post-petition action taken by the Debtor from constituting a waiver of the estate's use of the statute of limitations defense.

For all of these reasons, the Court holds that MOMA has not met its burden to show that its claim is revived under O.C.G.A. § 9-3-112.  Therefore, the trustee's objection is sustained.  An order consistent with this Opinion will be entered on this date herewith.

[END OF DOCUMENT]